# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO. 19-CR-378 (EGS)** |
| | : | |
| v. | : | |
| | : | |
| **ALVA REES,** | : | |
| Defendant. | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum to assist the Court in issuing an appropriate sentence in this case. For the reasons set forth herein, the government recommends that the Court sentence the Defendant to a term of incarceration of 180 months (15 years) to be followed by 120 months (10 years) of supervised release, with the conditions recommended by United States Office of Probation. Additionally, the Defendant is required by statute to register as a sex offender. In support of this memorandum and recommendation, the government relies on the following points and authorities, and such other points and authorities that may be cited at the sentencing hearing.

## I.   BACKGROUND

### A.   Statement of Offense

Leading up to February 26, 2019, a detective with the Metropolitan Police Department ("UC") was acting in an undercover capacity as part of the Metropolitan Police Department-Federal Bureau of Investigation ("MPD-FBI") Child Exploitation Task Force operating out of a local office in

Washington, D.C.  In that capacity, the UC entered a public group on KIK[1] with a title indicative of its use for the exchange of child pornography and other child exploitation activity. While observing the users in the group, the UC observed user "demon_1993," later identified as ROBERT ANDREW RILEY (herein "RILEY") post a message asking if anyone was "live" with their children.  The UC initiated a private KIK chat with this user.  During the court of the chat, RILEY stated that he was looking for someone "legitimate" to be his "moderator"[2] of a KIK group for real parents.  RILEY added the UC to a group called, "Taboo Parents" and made the UC a moderator of the group.

Between February 26 and March 27, 2019, "Taboo Parents" had 54 unique members who entered into the group.  Membership ebbed and flowed over that period as users entered and left the group, but as of March 27, 2019, there were 36 members in the group.  In addition to RILEY, these members during this time period included users with the user names "littlesarah6021," later identified as RICHARD CASEY MCGARRAH (herein "MCHARRAH"); "lacylaw2," later identified as ASHLEY ANNE IVERSON (herein "IVERSON"); "carolinamilv," later identified as JAMES RICHARD BENNETT (herein "BENNETT"); "chronicchef23," later identified as CODY TAYLOR GRIGORIADIS (herein "GRIGORIADIS") "ohyes2756," later identified as DYLAN CHARLES YOUNG (herein YOUNG); "sarahharas7c;" clynn68, later identified as BRITTANY COLLEEN BAILEY (herein BAILEY); and "alandemily47," later identified as ALVA REED REES (herein REES)

In the "Taboo Parents" KIK group, moderators and users discussed the sexual abuse of children and encouraged the members to post and share with "no limits."  For example, on March 9,

---

[1] KIK is a freeware instant messaging mobile application where one can transmit and receive messages, photos, videos, sketches, mobile webpages, and other content.  Users can communicate privately with other users or in groups.

[2] A moderator, also called an administrator, in a KIK Group is responsible for inviting new members to the group, banning members from the group, and establishing the rules of the group.

2019, the following exchange occurred:

> IVERSON: I would love to watch a young boy and a young girl put the same age played with by a man
>
> Peterfc90: Yeah lacy! Have u there holding them down for us to use them
>
> IVERSON: Dreams ahhhhhh……..
>
> Eliforp2019: Lacy, would you use them yourself?
>
> Peterfc90: Hopefully
>
> IVERSON: I'd help for surr
>
> IVERSON: I just love watching. I used to have A friend that I'd let come touch any kids that I had asleep here n I just watched
>
> Peterfc90: Hot
>
> Peterfc90: Love to come use them infront of u
>
> IVERSON: Mmmmm please
>
> Eliforp2019: Just watch? Did you masturbate too?
>
> IVERSON: Of course I came like 5 times the first time he came n touched 4 kids

On March 11, 2019, the following exchange ensued:

> IVERSON: Anyone with very young kids?
>
> IVERSON: I had sex in front of my niece she is 3. We lickerd her. N today I'm going to try n have her for a few days so we can fully break her in. Like I want my friend to do it all

> Similarly, on March 10, 2019, in response to BENNETT asking if there were any parents with newborns, REES responded, "My wife and I are due in April with twins." On March 11, 2019, beginning at 7:45PM EST, REES sent the group three images of a nude adult pregnant female whose face is visible to the camera. REES then stated, "We're looking at about a month till delivery." and

"We've got twins that are due in a month so I'll have a lot more to post soon."

During the time the group was moderated by the UC, images and videos depicting child pornography were posted to the group by multiple users. For example, on March 9, 2019, at 4:57 PM EST the following conversation occurred in the "Taboo Parents" group chat:

GRIGORIADIS: Anyone in socal? Thinking about hosting

GRIGORIADIS: Or is that a bad idea?

Littlesarah6021: Never a bad idea

GRIGORIADIS: lol okay

Eliforp2019: Would… would your wife get involved? With the young ones?

GRIGORIADIS: Probably go for when she outa town for that one

GRIGORIADIS: Think it be cool if a group took the youngest ones cherry

GRIGORIADIS then posted a 14 second video file depicting child pornography involving a prepubescent female. In response IVERSON stated, "My dream would be to help a man with a girl about the age of the girl in video,"

On March 11, 2019, IVERSON sent an image of her face with the text "Meeee" as well as a video of herself nude to the group. In the video, her face is visible to the camera and a tattoo can be seen on her right abdomen/hip area. IVERSON then posted clothed images of her son and daughter to the group, and subsequently wrote "I love cp and bp."[3] She further stated, "Mmmm I've got links." REES, stated "will you share the links with us." The following conversation then begins at 7:53PM EST:

Justmeag1: Please share, ((,

---

[3] "cp" is an abbreviation for "child pornography."

4

IVERSON: [link to a maga.nz[4] page]

Jestmeag1: What app is that

IVERSON: My fave [second link to a mega.nz page]

IVERSON: Mega

REES: These won't play

IVERSON: They will

IVERSON: Not all but they will

Justmeag1: Waiting patiently

Justmeag1: Impatiently

IVERSON: For what

REES: They won't play

Justmeag1: For them to play

IVERSON: None??

Justmeag1: Nope

REES: They have to be underlined or they won't load

BENNETT: Works here

IVERSON: Then copy n paste it back hetr

Dinero357: Can someone post them on here

BENNETT: Yeah Lacy. I did that . works

REES: [reposts the second Mega.nz link previously provided by IVERSON as an active hyperlink capable of displaying the content therein]

Justmeag1: There we go

---

[4] Mega.nz is file hosting service that allows users to store files and data in the cloud. Users can then share those files via links to the content stored in the mega.nz account.

BENNETT: Rooms quiet while cocks come our and clits get rubbed lol

Rover35: Hehehe

Justmeag1: Im jacking off lol

Rover35: I best not look until I get home as I'm at work right now

Dinero357: Yes they are hot hot vids

Justmeag1: AMAZING

BENNETT: Moms rubbing clits dad's jacking off. I need a new born to use

YOUNG: Yes!

At that time, the UC reviewed the contents of the links initially provided by IVERSON, one of which was reposted by REES, and noted that they contained numerous videos of children as young as toddlers being sexually abused.

On March 12, 2019, law enforcement accessed the Mega.nz links provided by IVERSON and REES for a more comprehensive review of the content. Upon review, the Mega.nz link originally shared by IVERSON and reposted by REES contained several hundred image and video files, the majority of which appeared to depict child pornography. Specifically, inside a subfolder labeled "cp" within the folder "mom and child," including the following videos:

1. A one minute and ten second video file entitled "4c76d15fc8_240.mp4," which depicted an adult male penetrating the vagina of a prepubescent female with his penis and appearing to ejaculate inside her.

2. A two minute and thirty one second video entitled "cp mg27.mp4," which appeared to be four separate videos spliced together to create a single file. These four videos depicted: a) an adult female engaged in mouth to vagina contact with a female toddler, as well as digitally penetrating the child's vagina, b) an adult male penetrating the vagina of a female toddler with his penis, c) an adult male penetrating the vagina of a female toddler with his penis, and d) an adult male penetrating the vagina of a female toddler with his penis.

3. A forty-five second video file entitled "cp anal y vaginal.mp4," which depicted an adult male penetrating the anus and vagina of a female toddler.

    4. A three minute and eleven second video file entitled "cp 5.mp4," which depicted the vaginal penetration of a female infant using a toothbrush and a purple rod. After the purple rod was used to penetrate the infant, it was put into the infant's mouth. A sign visible behind the infant reads "Puffy Pudenda For Hoarders Hell."

FBI used administrative subpoena returns, law enforcement and open source databases to confirm the identity of "alandemily47" as the defendant, Alva Reed REES. After Rees was arrested, he gave a custodial interview FBI agents, during which he also confirmed that his KiK user name was "alandemily47" and identified the phone that he believed contained the KiK application that he had used.

**B.**     **Procedural Posture**

The Defendant, Mr. Rees, was initially arrested in his home state of Colorado on an arrest warrant originating out of this Court for a violation of 18 U.S.C. Section 2252(a)(2), Distribution of Child Pornography. He made his initial appearance in the United States District Court for the District of Colorado, where a detention hearing was held, and a magistrate judge of that court ordered the Defendant held without bond pending trial. The Defendant was then transferred to this Court. On June 18, 2019, the Defendant made his initial appearance in this court. The parties engaged in extensive discovery and plea negotiations and ultimately reached a resolution to this case short of trial.  Pursuant to a signed plea agreement, the Defendant pled guilty on December 16, 2019 to One Count of Distribution of Child Pornography in violation of 18 U.S.C. Section 2252(a)(2). That plea agreement inter alia recognizes that the Defendant is subject to a higher mandatory minimum of 180 months (15 years) incarceration for this offense as a repeat offender and that the parties' estimated sentencing guideline range is 188-235 months.  The original sentencing schedule was delayed several times inter alia so that the Defendant could undergo a

complete psychosexual evaluation and due to the ongoing COVID-19 pandemic. It is now set for May 11, 2021 before your Honor.

## II. SENTENCING CALCULATION

### A. Statutory Penalties

The offense of Distribution of Child Pornography, in violation 18 U.S.C. § 2252(a)(2), carries a mandatory-minimum prison sentence of 15 years and a maximum sentence of 40 years imprisonment for this defendant due to his prior qualifying conviction for possession of child pornography. See Presentence Investigation Report dated March 26, 2021 ("PSR") ¶¶ 5, 121; 18 U.S.C. § 2252(b)(1). The offense also carries a maximum fine of $250,000, and a term of supervised release of not less than five years and up to life pursuant to 18 U.S.C. § 3583. See PSR ¶¶ 126, 138. Pursuant to 18 U.S.C. § 3013(a)(2)(A), the defendant must pay a mandatory special assessment fee of $100 for each felony conviction payable to the Clerk of the United States District Court for the District of Columbia. See PSR ¶ 139. The defendant must also register as a sex offender pursuant to 18 U.S.C. § 2250 and 34 U.S.C. §§ 20911(3), and 20915(a)(2).

### B. Sentencing Guidelines Range

The parties agree that the applicable Estimated Guidelines Range is 188 to 235 months incarceration. See PSR ¶¶ 8, 10, 41-54, 122. The base offense level is 22 pursuant to U.S.S.G. § 2G2.2(a)(2). The parties agree that several specific offense characteristics apply: the offense involved a prepubescent minor or minors under the age of 12 (+2); the offense involved the knowing distribution of child pornography (+2); the offense involved depictions of sadistic and/or masochistic conduct (+4); the offense involved the use of a computer or an interactive computer service (+2)); and the offense involved at least 600 images (+5). See id. ¶¶ 41-50.

8

The defendant is entitled to a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). Id ¶ 52. The government requests that the defendant's level be decreased by an additional point pursuant to § 3E1.1(b), as the defendant timely notified authorities of his intention to enter a guilty plea and thus permitted the government and the Court to preserve resources. Id ¶ 53. With these adjustments, the defendant's total offense level is 34.

The defendant has a total criminal history score of six points. According to the sentencing table in U.S.S.G. Chapter 5, Part A, a criminal history score of six establishes a criminal history category of III. With a total offense level of 34 and a criminal history category of III, the defendant's recommended guideline sentencing range is 188 to 235 months, and a supervised release range of 5 years to life, and an effective fine range of $35,000 to $250,000. PSR ¶¶ 122, 127, 142. This offense also carries a mandatory minimum term of incarceration of 180 months due to the defendant's prior conviction for possession of child pornography as discussed *supra*.

### III.     GOVERNMENT'S RECOMMENDATION

#### A.     Application of the Federal Sentencing Guidelines

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1). Booker, 125 S. Ct. at 756.

In post-Booker cases, the Supreme Court has stated that a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See United States v. Gall, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.") After giving

both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). Id.  These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

      **B.**      **Basis for the Government's Recommendation**

Given the particular circumstances of this case, the government submits that a sentence of 180 months incarceration, to be followed by 120 months supervised release, and the specific conditions of supervision recommended by the United States Office of Probation, is appropriate and warranted based on the factors outlined in 18 U.S.C. § 3553(a).  The recommended sentence, which is below the estimated sentencing guideline range and at the applicable statutory mandatory minimum, is sufficient, but not greater than necessary to accomplish the purposes of sentencing.  Given the serious nature of the Defendant's conduct in this case, his criminal history and his risk to the community, balanced against his particular circumstances and early acceptance of responsibility, the government believes this is an appropriate sentence.

1. **Nature and Circumstances of the Offense**

The defendant's distribution of child pornography is a violent offense, and not just because of Congress' designation of it as such. As many courts have recognized, "[It is an] undeniable fact that real children are actually being abused and violated when pornographic images are made. Without a market for such images, and without a strong appetite for more and more images exhibited by [defendant] and similarly situated defendants, there would be far fewer children who are injured and criminally assaulted in this way." United States v. Miller, 665 F.3d 114, 123 (5th Cir. 2011). This is also a very serious offense that ordinarily carries a five year mandatory minimum term of incarceration, but due to Defendant's prior child pornography related conviction, will carry a 15 year mandatory minimum sentence for Defendant.

That the Defendant has engaged in this conduct before and continues to do so even after his prior incarceration is relevant to the circumstances of this offense. Moreover, his actions in this case are particularly disturbing. The Defendant distributed large quantities of child pornography featuring children as young as infants and toddlers being sexually abused, he gleefully discussed the sexual exploitation of children, and discussed creating and distributing child pornography of his own infants as soon as they were born.

**2. Defendant's History and Characteristics**

As noted, the Defendant has a prior child pornography conviction from the state of Florida for which he was incarcerated. He was also required to register as a sex offender as a result of this conviction, but he failed to do so and was later convicted of Failure to Register as a Sex Offender. He apparently failed to comply with his terms of release in that case as well, and his probation and parole was revoked multiple times in that case.

The Defendant did acknowledge guilt at an early stage in the proceeding, and has consistently expressed remorse for his actions, factors that were certainly taken into consideration in the Government's plea offer and allocution here. However, the Government is concerned that, based on his psychosexual evaluation, the Defendant appears to be at an above average risk of re-offending. PSR ¶ 89.

**3. Punishment, Deterrence, Protection, and Correction**

The sentencing court "shall impose a sentence sufficient, but not greater than necessary" to comply with the need for a sentence: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The government's recommended sentence is sufficient, but not greater than necessary, to provide just punishment for the defendant's offenses. The defendant's distribution of child pornography is harmful to society at large, as well as the specific child victims, and warrants a substantial sentence of imprisonment. As a matter of general deterrence, a sentence of incarceration signals that trafficking in child pornography represents a serious crime that cannot be tolerated. As a matter of specific deterrence, a prison sentence is appropriate and necessary to deter the defendant from committing future child exploitation crimes.

As to the specific term of 180 months incarceration recommended, the Government believes that this is an appropriate sentence on balance. On the one hand, the government acknowledges the defense's and probation's arguments regarding the applicable guidelines, the defendant has aspects of his history and characteristics that support leniency and the defendant

did plead guilty early in the proceeding. On the other hand, the repeated distribution and large quantities of child pornography (including sadistic and masochistic images involved), the defendant's prior child pornography offense, and his failure to register as a sex offender as required, warrants a substantial sentence. One hundred and eighty months represents a sentence that works to balance these concerns. It also represents the applicable mandatory minimum sentence.

Furthermore, a term of 10 years supervised release, with specific conditions recommended by the probation office, is crucial to ensuring that the defendant receives the treatment and support he needs to make further attempts to ensure that he does not commit similar offenses in the future.

**4. Available Sentences**

The defendant should be sentenced to a term of incarceration, as he is ineligible for probation because it is expressly precluded by the statute. According to the PSR, the defendant does not appear to have the ability to pay a fine. See PSR ¶ 120. In addition, the court should impose a term of supervised release to ensure that the defendant does not re-offend. The conditions of supervised release should include: sex offender evaluation and treatment, restrictions on direct contact with minors, and monitoring of the defendant's use of the Internet, computers, and any other Internet-capable devices as well as any other special conditions recommended by the United States Office of Probation in the PSR and at sentencing.

**CONCLUSION**

WHEREFORE, for all of the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of imprisonment of 180 months, to be followed by

120 months of supervised release, with the recommended conditions of supervision. The defendant is further required by statute to register as a sex offender.

                                    Respectfully submitted,

                                    CHANNING D. PHILLIPS
                                  ACTING UNITED STATES ATTORNEY

                                  _____/s/_____
                                  Nicholas Miranda
                                  Assistant United States Attorney
                                  D.C. Bar 995769
                                  555 4th Street, N.W., Room 4-233
                                  Washington, D.C. 20530
                                  (202) 252-7011
                                  Nicholas.Miranda@usdoj.gov